THE MAYOR AND ALDERMEN OF THE CITY OF MOBILE, PLAIN-
TIFFS IN ERROR, *v.* WILLIAM E. HALLETT, EXECUTOR OF
JOSHUA KENNEDY, DECEASED. DEFENDANT IN ERROR.

A grant by the Spanish government, confirmed by the United States, was made of a
lot of ground in the city of Mobile running from a certain boundary eastwardly to
the river Mobile. The land adjacent to this lot, and extending from high-water
mark to the channel of the river, in front of the lot, was held by the grantee as
appurtenant to the fast land above high-water mark. The city of Mobile instituted
an action to recover the same, asserting a title to it under the act of Congress of 26th
May, 1824, granting certain lots of ground to the corporation of the city of Mobile,
and to certain individuals in the said city. Held, that this lot was within the ex-
ceptions of the act of 1824; and no right to the same was vested in the city of Mobile
by the act.

IN error to the Supreme Court of the state of Alabama.

The case was argued by Mr. Test, for the plaintiffs in error;
and by Mr. Key and Mr. Sergeant, for the defendant in error.

Mr. Justice M'LEAN delivered the opinion of the Court.

This case is brought here by a writ of error from the Supreme
Court of Alabama. The plaintiffs claim title under an act of
Congress, and the decision of the State Court was against the title;
which, under the twenty-fifth section of the judiciary act, gives
jurisdiction to this Court.

The plaintiffs brought their action of trespass to try the title
to a lot of ground in the city of Mobile, bounded as follows—
commencing at a point on St. Louis street, in said city, sixty-six
feet west of the corner of St. Louis and Water streets, thence
north twenty-five degrees west to the line dividing the Price claim
from the Orange Grove claim, thence parallel with St. Louis
street eastwardly to the channel of the river, thence along the
channel of the river to a point meeting the line formed by the ex-
tension of the northern boundary of St. Louis street, thence along
the north boundary of St. Louis street to the place of beginning;
with certain specified exceptions.

[The City of Mobile v. Hallett.]

On the trial, the following bill of exceptions was taken: "This cause was tried at the Mobile Circuit Court, of April term, &c., and it was, among other things, proved that the premises which were claimed under an act of Congress, entitled 'An act granting certain lots of ground to the corporation of the city of Mobile, and to certain individuals of said city,' passed 26th May, 1824, were situated north of St. Louis street, and were bounded on the west by high-water mark, and east by the channel of the river; and that the defendant was claimant, in possession of the land lying immediately west, and which extended from some certain boundary eastwardly to the river, and which he held by a Spanish grant, confirmed by the United States. It was proved further that in the year 1824, and at the time of passing the act, Water street terminated below St. Louis street; and that in front of the lands which it was proved the defendant possessed in the direction, Water street was not extended or established, nor was its future course of direction known, or in any way determined on. Whereupon the Court charged the jury, that by the true construction of the act of Congress, the corporation of Mobile are not entitled to the premises in question, because the defendant possessed by grant originating from the Spanish government the adjacent land extending to the river Mobile, and the claim of the corporation was for land immediately west of it, extending from high-water mark to the channel of the river, to which charge the plaintiffs excepted."

The first section of the act of 1824, vests in the mayor and aldermen of the city of Mobile, for the time being, and their successors in office, for the sole use and benefit of the city, forever, all the right and claim of the United States to all the lots not sold or confirmed to individuals, either by that or any former act, and to which no equitable title existed in favour of an individual, under that or any other act, between high-water mark and the channel of the river, and between Church street and North Boundary street in front of the city.

And the second section of the act, which relinquishes the claim of the United States to the proprietors of front lots certain water lots which they had improved; excepts from the operation of the law, cases "where the Spanish government had made a new grant, or order of survey for the same, during the time at which

[The City of Mobile *v.* Hallett.]

they had the power to grant the same; in wnich case, the right and claim of the United States shall be, and is hereby vested in the person to whom such alienation, grant, or order of survey, was made, or in his legal representative. Provided, tnat nothing in the 'act contained shall be construed to affect the claim or claims, if any such there be, of any individual," &c.

From both sections of the above act, it will be perceived, that Congress carefully guarded against any interference with existing rights. In the first section, lots sold or confirmed to individuals, either by that or any former act to which an equitable title existed in favour of any individual, were excepted from the operation of the act; and the proviso to the second section declares that the act shall not be so construed as to affect the claims of any individual.

From the bill of exceptions, it appears, that the defendant was in possession of the land in controversy under a Spanish grant, which was confirmed by the United States; and that the land extended to the Mobile river. It was then within the exception in the act of 1824, and no right vested in the plaintiffs. We think, therefore, that the instruction of the Circuit Court to this effect, was right. The judgment of the Circuit Court was affirmed by the Supreme Court of Alabama, and we affirm the judgment of the latter Court.

Mr. Justice CATRON, dissenting.

I dissent from the principal opinion on several grounds. It is impossible for me to ascertain from the few facts stated in the record, whether the land in controversy lies in front of the city of Mobile, as it existed in 1824. It is quite probable it lies north of any established street running west from the bay, at date of the act of Congress under which the corporation claims; and it is clear that such street is the limit of grant on the north, as it calls for "North Boundary street;" and it is an admitted fact that no street bearing this name existed in 1824. It was incumbent on the corporation, as plaintiffs, to prove that their grant included the premises sued for to authorize a recovery on the strength of their own title; as they could not rely upon the weakness of that of their adversary. Until this was done, the validity of the statute of the United States could not be drawn in question in

the State Court. It must appear upon the face of the record, 1. That such a question might have arisen; and 2. that it was actually made; and 3. that it was decided. For the rule, I refer to the case of. Armstrong *v.* The Treasurer of Athens County, decided at this term. Suppose it appeared by the record that the land lay miles above the city as it existed in 1824, and yet the State Court had seen proper to declare that the act of Congress was void: could this Court take jurisdiction to examine and reverse the state decision? I think not. No question on the validity of the act could in such case have been properly raised or decided; because the act of Congress had no application to the premises sued for. It rested on the plaintiffs in error to show in the bill of exceptions the facts that could give rise to the question: we cannot infer the facts, to give this Court jurisdiction under the twenty-fifth section of the act of 1789. If it be true, that the making such a question at the bar, and its decision by the State Court, gives jurisdiction to this Court, then the validity of this act of Congress may be drawn in question in any case when the State Court sees proper to give an abstract opinion in regard to it.

It is supposed the description of the premises in the declaration can be referred to in this case, to aid the bill of exceptions; which in itself is not pretended to be sufficient to raise the question on the validity of the act of Congress. The declaration is allegation, not proof. It is not referred to by the exceptions; no fact stated in it is recognised as proved by the Court. The bill of exceptions states, that the plaintiffs claimed under the act of 1824; that the premises claimed by plaintiffs were north of St. Louis street, were bounded on the west by high-water mark, and east by the channel of the river; and that the defendant was claimant in possession of the land lying immediately west, and which extended eastwardly to the river; and which he held under a Spanish grant; and that Water street, in 1824, did not extend so far north as the front of the land claimed by defendant; and this is all it states. I deem it wholly inadmissible in this Court to assume jurisdiction under the twenty-fifth section, by inference. But if it could, I should infer, rather, that the land in dispute lay north of the front of the city, when the grant

was made, than the reverse, because Water street did not extend so far north at that time.

Secondly, If the premises are situate south of North Boundary street, as it existed in 1824, then, I have no doubt, the corporation took title by virtue of the act of that year; notwithstanding that the land of the defendant's testator, Kennedy, fronted on the shore of the river, and was bounded by the high-water mark. The Mobile bay is an arm of the sea, where the tide flows and reflows, and is part of the ocean; and is navigable in the sense of the term as applicable to such waters. The shores between the high and low water marks belonged to the King of Spain, and passed to the United States by our treaty with France, in 1803, as the King of Spain held them; unless they had been granted by the king before the cession to France, or at least before they were ceded to the United States, in 1803. In regard to title, no difference exists between the high lands, and those flowed by the tide. The act of 1824 granted the lands between ordinary high-water mark and the channel of the river to the corporation of Mobile. The bill of exceptions in effect states, "That the defendant was claimant in possession of land lying immediately west of the land sued for; that his claim extended to the river, and lay west of it; and that the lands of the plaintiffs were bounded on the west by the high-water mark, and extended east to the channel of the river." So that the high-water mark is the common boundary between the grants.

I concur with my brethren of the majority, that if the defendant was in possession of the land in controversy under a confirmed Spanish grant, that then such Spanish grant is excepted from the act of 1824; and that this is the true construction of the act, as this Court held in Pollard's heirs v. Kibbé: and it matters not when the Spanish grant was made, so that it was before Spain surrendered the country to the United States, for although such grant was void, still the act of 1824 intended to except it. This is the settled doctrine of the Court on the construction of the act.

But my brethren and myself differ as to the fact; we cannot go out of the record; and this explicitly states that the eastern boundary of the defendant's land was the western boundary of that sued for by the plaintiffs; and it is almost the only explicit

statement in the bill of exceptions. The case did not turn in the Courts below on a conflict of boundary; but, obviously, on the grounds assumed in the case of the same plaintiffs against Eslava, as will be seen hereafter.

As no right to the soil below high-water mark was claimed for the defendant, further discussion on this point might be dispensed with : yet, as the New Jersey case of Martin *v.* Waddel has just been argued for the third time in this Court, and the doctrine of riparian rights was very fully presented, and as the authorities are at hand, a slight reference to them will be made.

A primary rule of construction, according to the English common law as applicable to grants of land made by the government to individuals, when they front on the shores of tide-waters, is, that they go no further than ordinary high-water mark; and if the grant extends over the tide-water, taking the high land on both sides, the land under water does not pass by the ordinary terms of grant, applicable to high lands; because the soil under tide-waters is a public sovereign right, and an estate to itself, in the sovereign, held in trust for the public use, separate from the high land. This is the settled doctrine in England, as will be seen by the case of the Royal Fishery of the Baune, 8 James 1, reported by Sir John Dory, 149; and by Angel, in his Treatise on Tide-waters, App. 35, ed. of 1826.

The case was recognised as sound law by the Court of King's Bench, in Carter *v.* Muscot, Lurr. Rep. 2162, it which it is said, " That navigable rivers, or arms of the sea, belong to the crown, and not like private rivers to the landowners on each side : and therefore the presumption lies the contrary way in the one case from what it does in the other. Here, indeed, it lies primâ facie, on the side of the king and the public." " The case of the Royal Salmon Fishery in the river Baune, in Sir John Dory's Reports, is agreeable to this; and it is a very good case."

The same doctrine has been maintained in Massachusetts, as will be seen by the case of Storer *v.* Freeman, 6 Mass. Rep. 435. In that state, a local peculiarity exists which is explained by the Court.

So in New York. Palmer *v.* Hicks, 6 Johns. 133; Mayor, &c., of New York *v.* Scott, 1 Caines' Rep. 355. And in many subsequent cases this rule of construction is recognised.

[The City of Mobile *v.* Hallett.]

I understand the same rule to app'y by force of the laws of Spain, to the Spanish grant under which the defendant Hallett claims. So the Supreme Court of Alabama held in Hogan *v.* Campbell, 8 Porter's Ala. Rep. 1, 24. And see Mayor, &c. of Mobile *v.* Eslava; opinion of Supreme Court of Alabama. And I feel disinclined on this point to look beyond the decisions of the State Court of Alabama; if power to look beyond it exists in this Court, on this particular point; which I doubt.

The defendant having no right of soil to the premises sued for, the next inquiry is, could Congress grant the land below high-water mark? That the United States acquired the right of soil from France, by the treaty of 1803, is not open to question; and that a mud-flat flowed by tide-water is the subject of grant by the government to an individual, I think, cannot well be doubted by any one acquainted with the southern country; where such valuable portions of it are mud-flats, in the constant course of reclamation.

That the King of England could so grant in the American colonies, and that the states of this Union, where the rights of soil are governed by the common law, can thus grant, is not an open question. The city of New York, by the king's charter of 1730, and by legislative acts of the state, holds a large body of land in and about the city that was formerly entirely below high-water mark, and that is but slightly reclaimed at this day; as will be seen by 1 Kent's Com. 7, 85.

And I understand it to be the settled doctrine in Alabama that the United States has power to grant the lands from high-water mark to the channel of the river Mobile, previous to the formation of the state constitution. So the Supreme Court of that state held, in Hogan *v.* Campbell, above cited. But the ground assumed by that Court, amongst others, is, that by the adoption of the state constitution, and its acceptance by Congress, the right of soil to all lands flowed by tides passed to the state government by implication, as an incident to the state sovereignty. And on the same principle was the present cause decided by that Court; for they certify in the record before us, " That the opinion delivered in the case of the Mayor, &c., of Mobile *v.* Eslava, at this term. is decisive of the present. The consequence is, that the

judgment of the Circuit Court is free from error, and must be affirmed."

The case of the Mayor, &c. *v.* Eslava has been before us this term, and I refer to my opinion in it for the reasons why I supposed the Supreme Court of Alabama mistaken when they declared the act of Congress void.

Assuming that the act of 1824 covered the land in controversy, then, I am of opinion that the Supreme Court of Alabama erred by declaring it invalid; and that the judgment ought to be reversed.