### MARSH *v.* NICHOLS and others.*

*(Circuit Court, E. D. Michigan. March 5, 1883.)*

1. PATENTS FOR INVENTIONS — VALIDITY — OMISSION OF SIGNATURE OF SECRETARY OF INTERIOR.

   A valid patent must be signed by the commissioner of patents and the secretary of the interior. If signed by the commissioner and not by the secretary, the patent is a nullity, though the omission be accidental.

2. SAME—RECORD OF PATENT-OFFICE.

   In such case the patent cannot be sustained by the production of the record of the patent-office showing a complete patent, since a perfect record of an imperfect patent cannot prove the grant.

*See 7 Sup. Ct. Rep. 704.

3. SAME—ACCIDENTS—AMENDMENT.

A patent accidentally issued without the signature of the secretary of the interior cannot be amended in that particular by his successor in office. Nor does it make any difference that the same person was "acting" secretary of the interior under both administrations, and signed the patent in that capacity.

In Equity.

This was a bill in equity to recover damages for the infringement of patent No. 236,052, issued to Elon A. Marsh, for an improvement in steam-engine valve gear. The only defense made upon the hearing was that there was no such patent in existence at the time the bill was filed.

Complainants produced at the hearing a patent marked Exhibit A, bearing date December 28, 1880, and purporting to be signed by "A. Bell, Acting Secretary of the Interior," and "E. M. Marble, Commissioner of Patents." The further evidence consisted of a stipulation to the following effect: "That the patent, Exhibit A, was received from the patent-office by complainants, on or about January 2, 1881, in all respects in the same condition as it now is, save the words "A. Bell" were not thereon where they now appear, and that the signature of E. M. Marble, commissioner of patents, and the seal of the patent-office are genuine; that neither complainants nor their counsel had knowledge of the omission of the signature of the secretary of the interior to said patent, and supposed it to be regular in all respects, having never had their attention called to the same until after the commencement of this suit, and on or about February 12, 1882; that said Exhibit A was, on or about the seventeenth of February, 1882, sent by their solicitor to the patent-office, accompanied by a request from complainants to have the mistake corrected; that said exhibit was, on or about the twenty-fourth day of February, 1882, returned to their solicitor, signed "A. Bell, Acting Secretary of the Interior," and with no other or further change thereof." There was also admitted in evidence a letter from the commissioner of patents, of date April 28, 1882, stating that the application for the patent was duly made and granted, and the fees paid; that the case was placed in the weekly issue of patents of December 25, 1880, and duly entered in the alphabetical list of patentees; that the specifications and drawings were duly printed and published, the patent regularly prepared and presented to the commissioner of patents and the acting secretary of the interior for signature; that the said letters patent, supposed to be complete in every respect, were mailed to the patentees; that the patent was returned to the office,

February 23, 1882, and attention called to the fact that the signature of Mr. Bell, who signed the patents issued December 28, 1880, as acting secretary of the interior, had been omitted. They were presented to Mr. Bell, who affixed his signature to the letters patent, which were returned to the patentee's solicitor, and that the omission of the signature was purely accidental, and probably resulted from their being inadvertently laid aside, or withdrawn from before the acting secretary while he was in the act of signing.

*R. A. Parker*, for plaintiff.

*George Harding* and *Alfred Russell*, for defendants.

BROWN, J. Section 4883 of the Revised Statutes requires all patents to be issued in the name of the United States, under the seal of the patent-office, and signed by the secretary of the interior, and countersigned by the commissioner of patents. The patent in this case was regularly issued the twenty-eighth of December, 1880, except that it was not signed by the secretary of the interior. Without this signature it was not merely a defective instrument; it was wholly void. The statute has required the patent to be attested by certain signatures, and the omission of one is as fatal as the omission of both. A similar omission was held fatal to a land patent in *McGarrahan* v. *Mining Co.* 96 U. S. 316, and to a mortgage in *Goodman* v. *Randall*, 44 Conn. 321. In the former case Mr. Chief Justice WAITE, in delivering the opinion of the court, said:

"Each and every one of the integral parts of the execution is essential to the perfection of the patent. They are of equal importance under the law, and one cannot be dispensed with more than another. Neither is directory, but all are mandatory. The question is not what, in the absence of statutory regulations, would constitute a valid grant, but what the statute requires; not what other statutes may prescribe, but what this does. Neither the signing nor the sealing nor the countersigning can be omitted, any more than the signing or the sealing or the acknowledgment by a grantor, or the attestation by witnesses, when by statute such forms are prescribed for the due execution of deeds by private parties for the conveyance of land. It has never been doubted that in such cases the omission of any statutory requirements invalidates the deed."

This case also disposes of the further point made by the complainants that the patent is but evidence of the grant, and that the complainant may resort to the records of the patent-office to prove his title. But if the instrument as it existed on the day it bears date was not entitled to record, (as it would not be if not signed,) the record is of no force. It is merely *prima facie* evidence, and liable

to be rebutted by proof that no patent was actually signed. Upon this point the chief justice observed:

"It is said that the record of the paper is evidence of the fact that the recorder recognized its completeness, and is equivalent to its counter-signature. The law is not satisfied with the simple recognition of the validity of a patent by an officer of the government. To be valid, a patent must be actually executed. * * *

"A perfect record of a perfect patent proves the grant; but a perfect record of an imperfect patent, or an imperfect record of a perfect patent, has no such effect. In such a case, if a perfect patent has in fact issued, it must be proved in some other way than by the record. It is undoubtedly true that when a right to a patent is complete, and the last formalities of the law in respect to its execution and issue have been complied with by the officers of the government charged with that duty, the record will be treated as presumptive evidence of its delivery to and acceptance by the grantee. But until the patent is complete it cannot be properly recorded, and, consequently, an incomplete record raises no such presumption."

The only remaining question is, what effect shall be given to the signature of Mr. Bell affixed to this patent in February, 1882, after the commencement of this suit? It appears that when the patent was put in evidence before the examiner the mistake was discovered, when the solicitor for complainant withdrew the paper, sent it to Washington, whence it was returned with the signature of Mr. Bell, as acting secretary of the interior, affixed. It was claimed that this might be treated as an amendment of the patent, and the opinion of Chief Justice MARSHALL in *Grant* v. *Raymond*, 6 Pet. 231, was cited to show that there existed an implied power in the various departments of government to correct errors and supply omissions occurring through inadvertence or mistake. It was held in that case that a patent might be surrendered when it contained a defect which arose from inadvertence or mistake, and without any fraud or misconduct on the part of the patentee; and that the secretary of state had authority to accept such surrender and cancel the record of the patent, and to issue a new patent for the unexpired part of the 14 years granted under the old patent. Provision was afterwards made by statute for such reissues. The decision, however, does not cover a case of a *void* patent, where the amendment is not simply the correction of an error, but the creation of a grant. If the patent had been valid when first issued, I should have little hesitation in holding that a mere mistake in the name of the patentee, or other similar error, might be corrected. This was done in *Bell* v. *Hearne*, 19 How. 252, in which a land patent issued in the name of James

Bell was surrendered, and a new patent issued to John Bell, upon evidence that he had paid the purchase money, and was in fact entitled to the patent, although in the mean time the land had been levied upon and sold under an execution against James Bell.

Again, the amendment, to be of any avail to the complainant here, must relate back to the date of the patent. As a general rule, it is true that an amendment relates back to the time the original pleading is filed; but there is an exception, almost equally well recognized, of cases where intervening rights have accrued, or the statute of limitations has become a bar. Thus, while a declaration may be amended, so far as it relates to the original cause of action, as of the date when it was filed, a new cause of action cannot be added where the time for bringing suit upon the same has expired since the filing of the original declaration. As against third persons, too, the amendment takes effect from the time when it is actually made. I know of no case holding that a grantor may sign a deed *nunc pro tunc* so as to make a third person a trespasser who was not actually so at the date of the deed. This is substantially what is attempted in this case. But there is another serious difficulty in the way of recognizing this signature as made in December, 1880. At this time Mr. Carl Schurz was secretary of the interior, but at the time the patent was actually signed he had been succeeded by Mr. Kirkwood. Now it is clear that Mr. Schurz could give no legal validity to his signature after he left the office, nor could Mr. Kirkwood affix his name to papers as of a date prior to his taking office. The date and the tenure of office must correspond. We are informed by the record that Mr. Bell was acting secretary of the interior during the administration of Mr. Schurz as well as of Mr. Kirkwood, but this fact does not relieve the complainants of their difficulty. The acting secretary of the interior stands simply in place of the permanent incumbent of the office, and has no greater powers than the latter. Now in 1880 Mr. Bell was acting for and in place of Mr. Schurz, while in 1882 he was performing the same functions for Mr. Kirkwood. As assistant secretary of the interior he fills a permanent though subordinate office recognized by law, but with no authority to sign patents. As acting secretary, he occupies temporarily the position of secretary, and can act only for a person then in office. His acts have no more force than those of any other agent in respect to his principal.

Whether this patent can be held valid from the time it was actually signed by Mr. Bell in February, 1882, we are not called upon to decide. Section 4885 declares that "every patent shall bear date as of a day not later than six months from the time at which it was

passed and allowed, and notice thereof was sent to the applicant or his agent; and if the final fee is not paid within that period the patent shall be withheld." It is possible that this provision was inserted simply for the purpose of securing payment of the final fee; but upon this point I express no opinion. This is undoubtedly a very hard case for the patentee. He has apparently invented a valuable improvement; he has satisfied the patent-office of his right to a monopoly for 17 years; he has complied with all the preliminary conditions, has paid his fees, and has received what he supposed to be a valid patent. By an oversight of the department, however, he has lost his exclusive right to manufacture and sell his invention. But the case seems to be beyond the reach of the judicial power. I find myself unable to hold that this patent was valid at the time the suit was commenced, without disregarding well-established principles of law.

A decree will be entered dismissing the bill.