## GARFIELD *v.* UNITED STATES EX REL. CARTFORD.

PUBLIC LANDS; PUBLIC OFFICERS; MANDAMUS.

1. The Secretary of the Interior will not be compelled by mandamus to deliver a patent for public land to an entryman, where it appears that the entry was canceled by the Commissioner of the General Land Office on the ground that it was of unsurveyed land; and that the decision of the office was affirmed on appeal by the entryman to the Secretary, who directed that no patent should issue, but, by mistake of a clerk, a patent was prepared in violation of such direction, and passed to execution and record, without discovery of the mistake. The Secretary has the power to correct such a mistake before the patent has actually passed out of his possession.

2. A patent for land shown by the records of the General Land Office, and decided by its officers, to be of unsurveyed land, is void.

No. 1871.    Submitted April 8, 1908.    Decided May 5, 1908.

HEARING on an appeal by the respondent, the Secretary of the Interior, from an order of the Supreme Court of the District of Columbia directing that the writ of mandamus issue to him commanding him to deliver a patent of public land to the relator.                              *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District ordering the appellant, James Rudolph Garfield, as Secretary of the Interior, to deliver a patent to the relator for 160 acres of land in the State of Oregon.

The petition alleges that the relator, Benjamin H. Cartford, being a person having the qualifications required by the act of Congress approved June 3, 1878, entitled "An Act for the Sale of Timber Lands in the States of California, Oregon, Nevada, and Washington Territory," filed, on February 28, 1903, in

the local land office at Roseburg, in the State of Oregon, his sworn statement for the purchase of the east half of the northwest quarter and the north half of the northeast quarter of section 6, township 25 south of range 6 west, of Williamette meridian, in the State of Oregon. That said land, prior to said entry, had been surveyed, the corners marked, and a plat including the same prepared and filed in the General Land Office. That the required proof was furnished, and petitioner paid the sum of $2.50 per acre, amounting to $400, with all the necessary fees, at the local land office, and, on July 13, 1903, received the cash certificate. The said proof and papers were forwarded to the General Land Office, and petitioner was notified, on August 19, 1904, to show cause why his entry of the east half of the northwest quarter of said section 6 should not be canceled, on the ground that the same had not been surveyed. Petitioner appealed from the order of cancelation to the Secretary, who affirmed the same. A motion for review of that decision was denied July 11, 1906. On October 9, 1906, petitioner filed a relinquishment of his right to said 80 acres of land, and an application for the return of the purchase money paid therefor. On September 21, 1907, he withdrew said relinquishment, no action having been taken thereon. The said sum of $400, paid for said 160 acres, is still in the possession of the United States. That, on November 19, 1906, a patent was duly executed to petitioner for both of said parcels of land, and recorded in the General Land Office. Said patent was transmitted to the local office with instructions to deliver the same to petitioner. Said patent was returned to the Commissioner of the General Land Office, without offer of delivery or notice given to petitioner, on December 28, 1906. That he thereafter demanded the said patent, and the same was refused. The Commissioner, on August 27, 1907, directed the cancelation of said patent, and offered to issue a patent for the other parcel, the right to which had never been questioned. Petitioner protested against said action, and appealed to the Secretary, who affirmed the same on October 19, 1907, but allowed the petitioner thirty days within which to relinquish to

the United States the said parcel of 80 acres aforesaid, otherwise cancelation to be made.   Petitioner refused to file a relinquishment, and so notified the Secretary on November 29, 1907.   That petitioner practised no fraud in the making of his entry and the prosecution of his claim, and the rights of no other applicants were involved.   That his patent had been unlawfully withheld; and he prayed a mandamus to compel the Secretary to deliver the same to him.

The pertinent facts in the return are:   That the entry of the said east half of the northwest quarter was illegal for the reason that it was unsurveyed land.   That the decision that this land was not subject to entry appears on the records of the General Land Office, and the final, or patent certificate proved by the Secretary shows upon its face the cancelation of the entry as to said 80 acres before described.   That, by mistake or inadvertence, the patent was written for both tracts, signed, and recorded.   That there was no authority for its issue, and the same has been withheld from petitioner, for want of authority to grant the said patent, in accordance with his duty. It is denied that the repayment of the purchase money has ever been refused.

The petitioner demurred to this return, and the court having sustained the same, ordered the mandamus to issue as prayed.

*Mr. George W. Woodruff,* Assistant Attorney General, and *Mr. E. F. Best,* Assistant Attorney, Department of the Interior, for the appellant.

*Mr. Watson E. Coleman* and *Mr. William L. Ford* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The contention of the appellee was that the patent, having been regularly signed, sealed, and recorded, passed the title

of the United States without actual delivery to the petitioner, and that the sole power to cancel the same is a judicial power, not within the jurisdiction of the Secretary; and that it became the plain duty of the Secretary to deliver the same into the possession of the petitioner upon his demand.

This contention was sustained by the learned justice presiding in the court below, as shown by his opinion, which is contained in the record, upon the authority of the following decisions of the Supreme Court of the United States: *United States* v. *Schurz,* 102 U. S. 378, 26 L. ed. 167; *Bicknell* v. *Comstock,* 113 U. S. 149, 28 L. ed. 962, 5 Sup. Ct. Rep. 399; *Re Emblen,* 161 U. S. 52, 40 L. ed. 613, 16 Sup. Ct. Rep. 487; *Germania Iron Co.* v. *United States,* 165 U. S. 379, 41 L. ed. 754, 17 Sup. Ct. Rep. 337.

The appellant contends that this case, by reason of its special facts and circumstances, is not governed by the foregoing decisions. He contends that the 80 acres of land, not having been surveyed, was not subject to entry and sale under the law; that the Secretary, having ascertained this fact, decided that he had no power to issue a patent therefor; and that the patent, issued through inadvertence thereafter, was void. It is not controverted that the act of June 3, 1878, under which the entry was made, authorized the sale of surveyed lands only, and that there is no other statute conferring the power to purchase and receive patents to unsurveyed lands. It was the duty of the Secretary, in passing upon applications, to determine, in the first instance, whether the land entered had been surveyed. He decided, from the records of the office, that the 80 acres aforesaid had not been surveyed, and his decision appeared upon the final or patent certificate. Notwithstanding this, by some unexplained mistake of the employee charged with the duty of preparing patents for execution, the patent was made to embrace the unapproved entry as well as that which had been approved. The decision of the Secretary had never been recalled, and the patent was executed and recorded without knowledge of this mistake.

That the second parcel of land had not been surveyed, and

was, therefore, not subject to entry, must also be taken as a fact admitted by the demurrer to the return.

The facts in the case of *United States* v. *Schurz, supra,* were different. As was said therein (p. 401): "The land in the present case had been surveyed, and, under their control, the land in that District generally had been opened to pre-emption * * * and sale. The question whether any particular tract, belonging to the government, was open to sale, pre-emption, or homestead right, is in every instance a question of law as applied to the facts for the determination of those officers. Their decision of such question, and of conflicting claims to the same land by different parties, is judicial in its character. It is clear that the right and duty of deciding all such questions belong to those officers, and the statutes have provided for original and appellate hearings in that department before the successive officers of higher grade up to the Secretary. They have, therefore, jurisdiction of such cases, and such provision is made for the correction of errors in the exercise of that jurisdiction. When their decision of such a question is finally made and recorded in the shape of the patent, how can it be said that the instrument is absolutely void for such errors as these? If a patent should issue for land in the State of Massachusetts, where the government never had any, it would be absolutely void. If it should issue for land once owned by the government, but long before sold and conveyed by patent to another who held possession, it might be held void in a court of law on the production of the senior patent. But such is not the case before us. Here the question is whether this land had been withdrawn from the control of the Land Department by certain acts of other persons, which include it within the limits of an incorporated town. The whole question is one of disputed law and disputed facts. It was a question for the land officers to consider and decide before they determined to issue McBride's patent. It was within their jurisdiction to do so. If they decided erroneously, the patent may be voidable, but not absolutely void."

In that case, then, the question for determination had been

decided, and the patent issued in accordance therewith.    As the issue and record of the patent amounted to a delivery so as to pass the title of the United States, there remained but the ministerial duty of actual delivery to the patentee.    In this connection, we make another excerpt from the opinion (p. 403) : "We are of opinion that, when all we have mentioned has been consciously and purposely done by each officer engaged in it, and where these officers have been acting in a matter within the scope of their duties, the legal title to the land passes to the grantee, and with it the right to the possession of the patent.    No further authority to consider the patentee's case remains in the Land Office, no right to consider whether he ought in equity, or on new information, to have the title or receive the patent."

Apparently, in order that the scope of the decision might not be misunderstood, the court also said:  "We do not say that there may not be rare cases where all this has been done [the regular issue record of the patent], and yet the officer in possession of the patent be not compellable to deliver it to the grantee.    If, for instance, the Secretary whom the President is authorized by law to appoint to sign his name to the patent should do so when he has been forbidden by the President, or if, by some mere clerical mistake, the intention of the officer performing an essential part in the execution of the patent has been frustrated.    It is not necessary to decide on all the hypothetical cases that could be imagined."    It is unnecessary to discuss the other cases cited as they do not extend the scope of the decision in the Schurz Case.    In the case at bar the question which the officers of the Land Office were called upon to determine had been decided adversely to the applicant to the patent, and their decision had been affirmed by the Secretary, who directed that no patent should issue for the unsurveyed tract.    But, by some mistake of a clerk, the patent was prepared in violation of this direction or order, and passed to execution and record without discovery of the mistake.    As recited in one of the hypothetical cases stated in the above quotation from the opinion in the Schurz Case, "by some clerical

mistake, the intention of the officer performing an essential part in the execution of the patent has been frustrated."

The conditions mentioned take this case out of the rule applied to the special facts of the *Schurz Case*, and bring it within another equally well established by the decision of the same court. *Bell* v. *Hearne*, 19 How. 252, 262, 15 L. ed. 614, 617; *Morton* v. *Nebraska*, 21 Wall. 660, 674, 22 L. ed. 639, 645; *Burfenning* v. *Chicago, St. P. M. & O. R. Co.* 163 U. S. 321, 324, 41 L. ed. 175, 176, 16 Sup. Ct. Rep. 1018, and others that need not be cited.

In *Bell* v. *Hearne, supra,* John Bell had applied for the purchase of certain land. His application having been approved in the local office and a certificate issued to him therefor, a duplicate certificate, as required by law, was prepared and transmitted to the General Land Office. By some inadvertence, the clerk entered the name of James Bell, instead of John, in this certificate. In due course patent was issued thereon and forwarded for delivery to James Bell. It remained undelivered, and several years thereafter was placed in the hands of John Bell, who returned it to the Land Office where it was canceled for error and a new patent issued and delivered to John Bell. James Bell was the brother of John, and appears to have acted as his agent in making the original application and entry. The land was afterwards sold under execution on a judgment against James Bell, and an action was begun by John Bell, in a State court of Louisiana, to recover possession of the purchaser at said sale. The question to be determined was whether the Commissioner had the authority to receive from John Bell the patent erroneously issued to James, cancel the same, and issue another to John. The supreme court of Louisiana answered this question in the negative. Their judgment was reversed. Mr. Justice Campbell, who delivered the opinion of the court, said: "The question, in our opinion, is exceedingly clear. The Commissioner of the General Land Office exercises a general superintendence over the subordinate officers of his department, and is clothed with liberal powers of control, to be exercised for the purposes of justice, and to prevent the conse-

quences of inadvertence, irregularity, mistake, and fraud, in the important and extensive operations of that office for the disposal of the public domain. The power exercised in this case is a power to correct a clerical mistake, the existence of which is shown plainly by the record, and is a necessary power in the administration of every department." *Morton* v. *Nebraska, supra,* was an action of ejectment against certain tenants of the State of Nebraka. Plaintiff had entered the lands in question and received a patent therefor. The State of Nebraska set up in defense the invalidity of the patent on the ground that the locations were without authority of law because the lands, being saline lands, were not subject to such entry. As the lands were found to be saline lands by the records of the Land Department, and, as such, not subject to entry, the patent was declared void. The court said: "It does not strengthen the case of the plaintiffs that they obtained certificates of entry, and that patents were subsequently issued on these certificates. It has been repeatedly decided by this court that patents issued for lands which have been previously granted, reserved from sale, or appropriated, are void. * * * The executive officers had no authority to issue a patent for the lands in controversy, because they were not subject to entry, having been previously reserved, and this want of power may be proved by a defendant in an action at law." *Burfenning* v. *Chicago, St. P. M. & O. R. Co. supra,* was an action of ejectment in which the plaintiff claimed under a patent from the United States. The land, when entered, was situated within the limits of an incorporated town. Such lands were excluded from pre-emption by existing statutes. It was held that the patent was void. As regards the effect of the action of the Land Office in recognizing the entry and issuing the patent, it was said by Mr. Justice Brewer, after affirming the finality of a decision of the Land Office on questions of fact within its power of determination: "But it is also equally true that when, by an act of Congress, a tract of land has been reserved from homestead and pre-emption, or dedicated to any special purpose, proceedings in the Land Department in defiance of

such reservation or dedication, although culminating in a patent, transfer no title, and may be challenged in an action at law. In other words, the action of the Land Department cannot override the expressed will of Congress, or convey away public lands in disregard or defiance thereof." After citing the case of *Morton* v. *Nebraska* as very closely in point, it was further said: "In that case it will be observed that the records disclosed that the lands were saline lands when the proceedings in the Land Department were had. So the case was not one in which the Department determined a fact upon parol evidence, but one in which it acted in disregard of an established and recorded fact."

Applying the doctrines of those cases to the special facts of this case, we are of the opinion that the Secretary of the Interior was not bound to deliver the patent to the petitioner containing the 80 acres of unsurveyed land. Such land was not open to entry under the act of June 3, 1878. Whether it was surveyed or unsurveyed land was a question which it was necessary for the Land Department to decide. From an inspection of the record of surveys required by law to be kept, the Commissioner of the General Land Office determined that this land had not been surveyed. On appeal to the Secretary this decision was affirmed and the patent was ordered to be issued for the other, which it appeared had been surveyed. This decision was of record in the office, and the final certificate for the issue of the patent showed this limitation. Through inadvertence of the officer charged with the duty of preparing the patent, this was not heeded, and the patent covering both tracts was passed to issue and record without discovery of the mistake. The Land Department had not, therefore, as was the fact in the *Schurz Case,* determined this question in favor of the applicant, and issued the patent in accordance with that decision, but had decided that the land was unsurveyed and, therefore, not subject to entry and patent. By clerical mistake or inadvertence, the patent issued in direct violation of this decision, and thereby frustrated the deliberate intention of the Commissioner and the Secretary. No just right can be founded on this

mistake, and the Secretary had the power to correct it, when called to his attention, before the patent had actually passed out of his possession. It is not a case of cancelation of a patent regularly issued after a determination in the patentee's favor, upon new information as to the facts on which that decision was founded, as was the attempt in *Schurz Case,* but the correction of a mistake in the issue, by matter of record, as in *Bell* v. *Hearne, supra.* In the former case the title passed in pursuance of a decision, and by the express intention of the Land Department. There was no fraud or mistake, and the attempt was to exercise an independent power of cancelation upon facts thereafter called to the attention of the Secretary. In the latter case, the records of the office showed that the land was reserved from entry by purchasers, and the Land Department decided that no patent could issue for that reason. Notwithstanding these facts, by clerical mistake, or inadvertence, the patent was declared and issued in direct opposition to the decision, and contrary to the intention of the Commissioner of the General Land Office, and the Secretary of the Interior. Aside from the fact that the patent issued by mistake only, we think that it was void because it undertook to convey land shown, by the records of the Land Department, and decided by its officers, to be unsurveyed land.

The absence of power to cancel a patent issued in pursuance of a final decision of the Land Department, and which is approved by the records of the Department to be regular in every respect, does not preclude the correction of a clerical mistake, apparent on the record, while, at least, the patent remains in the possession of the officers of the Land Department. As said in *Bell* v. *Hearne, supra:* "The power to correct a clerical mistake, the existence of which is shown plainly by the record, is a necessary power in the administration of every department."

For the reasons given, the judgment will be reversed with costs, and the cause remanded with direction to discharge the rule to show cause and dismiss the petition.                    *Reversed.*