MAYOR AND ALDERMEN OF THE CITY OF MOBILE, PLAINTIFFS, *v.* J. EMANUEL AND G. S. GAINES, DEFENDANTS.

The case of the City of Mobile *v.* Hallett, 16 Peters, 261, examined and confirmed.

Under the exception contained in the act of Congress of 1824, no title passed to the city of Mobile, where the land was in the possession of a party claiming to hold it under a Spanish grant which had been confirmed by the United States.

THIS case was brought up by writ of error, from the Supreme Court of the state of Alabama, under the twenty-fifth section of the judiciary act of 1789.

The facts in the case were these :

· On the 26th of September, 1807, the Spanish governor of Florida granted to John Forbes a tract of land immediately adjacent to what is now the city of Mobile, and indeed constituting a part of it. The grant was founded upon, and confirmatory of, an older one issued to Richardson in 1767, by the British government, then in possession of the country. The land was upon the west side of the river Mobile. In the document issued

by the surveyor-general, it is said to be "bounded on the east by said river;" and in that issued by the intendant, to be "terminated by the bank of said river on the east side:" in both, there is a reservation of a "free passage on the bank of the river."

On the 2d of March, 1819, Congress passed "An act to enable the people of the Alabama territory to form a constitution and state government, and for the admission of such state into the Union, on an equal footing with the original states," by the sixth section of which it was enacted, "That the following propositions be and the same are hereby offered to the convention of the said territory of Alabama, when formed, for their free acceptance or rejection, which, if accepted by the convention, shall be obligatory upon the United States." After enumerating many articles, the section concludes with this: "and that all navigable waters within the said state shall forever remain public highways, free to the citizens of said state and of the United States, without any tax, duty, impost, or toll, therefor, imposed by the said state."

By the original plan of the town a street was laid off, called Water street, on the margin of the river, running nearly north and south, which was afterwards filled up, and by the improvement the water, at high tide, was confined to the eastern edge of the street.

On the 26th of May, 1824, Congress passed "An act granting certain lots of ground to the corporation of the city of Mobile, and to certain individuals of said city," which is as follows:

1. "That all the right and claim of the United States to the lots known as the hospital and bakehouse lots, containing about three-fourths of an acre of land, in the city of Mobile, in the state of Alabama, and also all the right and claim of the United States to all the lots not sold or confirmed to individuals, either by this or any former act, and to which no equitable title exists in favour of any individual, under this or any former act, between high water-mark, and the channel of the river, and be tween Church street and North Boundary street, in front of the said city, be and the same are hereby vested in the mayor and aldermen of the said city of Mobile, for the time being, and their successors in office, for the sole use and benefit of the said city forever.

2. "That all the right and claim of the United States to so

many of the lots of ground east of Water street, and between Church street and North Boundary street, now known as water-lots, as are situated between the channel of the river and the front of the lots known under the Spanish government as water-lots, in the said city of Mobile, whereon improvements have been made, be and the same are hereby vested in the several proprietors and occupants of each of the lots heretofore fronting on the river Mobile, except in cases where such proprietor or occupant has alienated his right to any such lot now designated as a water-lot, or the Spanish government has made a new grant or order of survey for the same during the time at which they had the power to grant the same; in which case the rights and claims of the United States shall be and is hereby vested in the person to whom such alienation, grant, or order of survey was made, or in his legal representative.

" Provided, that nothing in this act contained shall be construed to affect the claim or claims, if any such there be, of any individual or individuals, or of any body politic or corporate." 7 vol. Laws of the United States, 318; 1 vol. Land Laws, ed. 1838, 398.

On the 8th of July, 1835, the mayor and aldermen of the city of Mobile brought an action of trespass to try title against Emanuel and Gaines in the state Circuit Court of Alabama, claiming several lots bounded on the west by Water street, and running eastward to the channel of the river.

On the trial of the cause, the jury, under the instructions of the court, found the defendants "not guilty" of the trespass. The court charged the jury "that if the place in controversy was, subsequent to the admission of this state into the Union, below both high and low water-mark, then Congress had no right to grant it; and if defendants were in possession, the plaintiffs could not oust them, by virtue of the act of Congress.

" That the grant to Forbes extended to high water-mark, and that if the place claimed was between high water-mark and the channel, in front of the grant, and had been reclaimed by the defendants; then the plaintiffs could not recover in virtue of the act of Congress, and this, notwithstanding the reservation of the right of way specified in the confirmation of the grant to Forbes."

City of Mobile *v.* Emanuel et al.

Upon this charge a bill of exceptions was founded, and the case carried to the Supreme Court of the state of Alabama, where the judgment of the court below was affirmed.

It is·necessary to refer to the opinion of the Supreme Court of the state of Alabama, in order to understand the ground upon which the dissentient opinion of Mr. Justice Catron is placed.

The Supreme Court of Alabama did not decide the first point raised in the bill of exceptions, viz., " that Congress had no right to grant the land to the city of Mobile." But being of opinion that the grant to Forbes conveyed to him the intervening space between high water-mark and the channel of the river, (covering the property in dispute,) and thus precluded the plaintiffs from ever recovering it; and being moreover of opinion, that a judgment ought not to be reversed for a misdirection of the judge to the jury, if it appears that the party complaining could not have been injured, that court waived all examination into the correctness of the first point, and contented itself with affirming the judgment of the court below.

*Test*, for the plaintiffs in error.
*Sergeants*, for the defendants.

Mr. Justice McLEAN delivered the opinion of the court.

This cause is brought to this court by a writ of error, to the Supreme Court of Alabama.

An action of trespass to try the title to a certain lot or piece of ground in the city of Mobile, was commenced by the plaintiffs against the defendants, in the Circuit Court of the state. Issue being joined, a jury were empannelled, who rendered a verdict of not guilty. As the right of the plaintiffs was asserted, exclusively, under an act of Congress, and the decision being against that right, the plaintiffs, having excepted to certain rulings of the court on the trial, prosecuted this writ of error, under the twenty-fifth section of the judiciary act of 1789.

The bill of exceptions states that it was proved the defendants were in possession of the premises ·described in the declaration, at the time the suit was brought.

. An·act of Congress, entitled " An act, granting certain lots of ground to the corporation of the city of ·Mobile, and to certain

individuals of said city," passed 20th May, 1824, was read : also " A resolution of the mayor and aldermen of the city of Mobile, passed the 23d day of April, 1834, in the following words : ' Resolved, that the map of the city as now shown to the board, be accepted and approved ; and it is further resolved that the names of the streets be the same as heretofore established.' "

It was also proved by the plaintiffs that the map referred to was one published by Goodwin and Haise, a copperplate copy of which was offered in evidence ; a copy of such parts of said map as is necessary to refer to is annexed.

It was also proved that there never had been a street in Mobile, known as North Boundary street. And also, that the premises in question were situate, in May, 1824, between Church street, south of Adams street, and below high water as well as low water-mark and the channel of the river. It was also proved that the premises were north of St. Louis street, as laid out in said map, and that in 1824, Water street did not extend to St. Louis street, and that at that time buildings were few and scattered above St. Louis street.

The defendant offered in evidence a grant from the Spanish government, and proved that they claimed title to the premises under that grant.

The court charged the jury that, if the place in controversy was, subsequent to the admission of this state into the Union, below both high and low water-mark, then Congress had no right to grant it ; and if defendants were in possession, the plaintiffs could not oust them, by virtue of the act of Congress. That the grant to Forbes extended to high water-mark, and that if the place claimed was between high water-mark and the channel, in front of the grant, and had been reclaimed by the defendants, then the plaintiffs could not recover in virtue of the act of Congress, and this, notwithstanding the reservation of the right of way specified in the confirmation of the grant to Forbes."

It appeared that on the 9th January, 1767, the English government, being then in possession of the country, had granted the land in controversy to William Richardson ; and that a grant of the same land was made to John Forbes and Co., the assignees of Richardson, by the Spanish authority, the 26th September, 1807. In the British grant the land " was bounded east by the

river Mobile," and by the Spanish "by the bank of the river," "leaving a free passage on the bank," &c.

The case was removed by writ of error from the Circuit Court to the Supreme Court of the state, in which judgment was affirmed.

The first section of the act of 1824, referred to in the bill of exeeptions, vests "in the mayor and aldermen of the city of Mobile, for the time being, and their successors in office, for the sole use and benefit of the city, forever, all the right and claim of the United States to all the lots not sold or confirmed to individuals, either by that or any former act, and to which no equitable title exists in favour of an individual under that or any other act, between high water-mark and the channel of the river, and between Church street and North Boundary street, in front of the city."

And the second section of the act "excepts from the operation of the law, cases where the Spanish government had made a new grant or order of survey for the same, during the time at which they had the power to grant the same; in which case, the right and claim of the United States shall be and is hereby vested in the person to whom such alienation, grant, or order of survey, was made, or in his legal representative."

In principle this case is similar to that of the City of Mobile *v.* Hallett, 16 Peters, 261. In that cause the court say, "From the bill of exceptions, it appears, that the defendant was in possession of the land in controversy under a Spanish grant, which was confirmed by the United States; and that the land extended to the Mobile river. It was then within the exception in the act of 1824, and no right vested in the plaintiffs. We think, therefore, that the instruction of the Circuit Court to this effect, was right." The same language is equally applicable to the case under consideration. And it appears that the judgment of the Circuit Court was affirmed by the Supreme Court of Alabama, on the ground that "there was no vacant space between high and low water-mark; all having been sold and confirmed to Forbes," under his Spanish grant.

The Spanish grant being an exception in the act, under which the plaintiffs claim, the instruction of the Circuit Court in favour of the defendant was correct. The judgment f the Supreme Court of Alabama is affirmed.

Mr. Justice CATRON dissented.

The premises in controversy lie in front of the city of Mobile, and are claimed by the corporation, by virtue of the act of Congress, of May 20, 1824. They lie both below high and low water-mark.

The court charged the jury that, if the place in controversy was subsequent to the admission of this state into the Union, below both high and low water-mark, then Congress had no right to grant it, and. if defendants were in possession, the plaintiffs could not oust them, by virtue of the act of Congress.

That the grant to Forbes extended to high water-mark, and that if the place claimed was between high water-mark, and the channel, in front of the grant, and had been reclaimed by defend-. ants; then the plaintiffs could not recover in virtue of the act of Congress, and this, notwithstanding the reservation of the rights of way specified in the confirmation of the grant to Forbes.

To all of which charge the counsel of the plaintiffs excepted.

The jury found a general verdict of not guilty. As Alabama was admitted into the Union, December 14, 1819, the first instruction was conclusive of the plaintiffs' title. On the admitted fact, that the land lay under the water in 1824, the court pronounced the act of Congress void.

The second instruction depends on the fact, " whether the defendant had reclaimed the land in front of the grant of Forbes." There is no evidence in the record that he had done so ; and all the evidence purports to have been set out.

A writ of error was prosecuted to the Supreme Court of Alabama. That court simply affirmed the judgment of the Circuit Court : and from that affirmance a writ of error was prosecuted to this court, by the corporation of the city of Mobile, under the twenty-fifth section of the judiciary act.

One error assigned in the Supreme Court of Alabama, was, "That the charge of the circuit judge denies, that the United States had right and power to grant the premises in question."

On the general affirmance, can this court take jurisdiction and reverse, because the first instruction was erroneous. In the case of the same plaintiffs against Eslava, 16 Peters, 246, the majority of the court held, that the opinion of the Supreme Court of Alabama certified as part of the record, was no part of it.

Speaking of the opinion, the court says: "Their opinion constitutes no part of the record, and is not properly a part of the case. We must look to the points raised by the exceptions in the Circuit Court, as the only questions for our consideration and decision."

And so this court held, in even a stronger case, (Gordon *v.* Longest, 16 Peters, 103,) where there had been a general affirmance of the judgment below, by the Supreme Court of Kentucky.

In Eslava's case, I thought the opinion of the Supreme Court of Alabama formed part of the record: in that case, as in this, the opinion was found in the paper book; but a majority of the court ruled it out, as no part of the record; to which decision I submit, of course.

Looking only to the points raised by the exceptions in the Circuit Court, and we find it established with a plainness admitting of no doubt, that Alabama claims to hold as her own; and does actually hold, by force of her judicial decisions, all the lands within the state, flowed by tide water: and that this claim is founded, on an implied cession of the lands under tide water, by the United States to Alabama, as a consequence of the sanction given by Congress to the state constitution. The disastrous results of this assumption on part of the state courts of Alabama, I endeavoured to point out, (so far as pressure of circumstances would permit,) in my opinions in the cases of these plaintiffs against Eslava and Hallet, 16 Peters, 247 and 263.

That the United States had the undoubted title before the adoption of the constitution of Alabama, has never been denied by any one; and that the state acquired title by that event has not been proved, nor can it be, as I think: nor is it perceived how the question can be avoided in the cause before us, unless we look beyond the record. I therefore believe the judgment should be reversed because there was error in the first instruction. For my reasons I refer to the opinions in the cases of Eslava and Hallet. To these I will add, that it is impossible for this court to follow the decisions of the Supreme Court of Alabama, without overruling the decision in Pollard's heirs *v.* Kibbie, 14 Peters, 353. William Pollard claimed a square of land below high water-mark fronting the city of Mobile: the claim was founded originally on a Spanish concession, made in 1809. This

City of Mobile *v.* Emanuel et al.

was merely void, as was held in Foster and Elam *v.* Neilson, 2 Peters, 254, and in Garcia *v.* Lee, 12 Peters, 511. By the 2d sec. of the act of 1824, the land was excepted from its operation and did not pass to the city of Mobile. 14 Peters, 364, 365, 366. The title to the square claimed by Pollard therefore remained in th. United States until it was granted to his heirs, by a private act of Congress, of 1836, and a patent founded on the act, dated in 1837. This court maintained the title, and a recovery was had on the act of 1836, and the patent from the government.

If the act of 1824 is void, because Congress had no power to grant the lands below the flow of the tides; so is equally, and as certainly, the act of 1836, and the patent founded on it.

Forbes owned the land, in front of the land granted to Pollard's heirs: Forbes's grant extended to high water-mark; was dated in 1802; and was undisputed. This court held in effect that it was bounded, and could not extend by implication beyond the high water-mark. So is the undoubted construction of grants for lands fronting tide waters. A grant of lands on each side of an arm of the sea, and embracing it, does not pass the land under the water by general words; there must be special words of grant, showing plainly the land covered with water, was intended to be granted: without such explicit words of grant, the high lands only pass. Such is the settled doctrine of this court. Martin *v.* Waddel, 16 Peters, 367. Forbes therefore could not claim as riparian owner, the land granted on his front, to Pollard: to hold otherwise would overrule the decision of Martin *v.* Waddel.

In any aspect this controversy can be presented, it falls within the decision of Pollard *v.* Kibbie: that case must be overruled, if the doctrine of the courts of Alabama is maintained.

### ORDER.

This cause came on to be heard on the transcript of the record from the Supreme Court of the state of Alabama, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court in this cause be and the same is hereby affirmed, with costs.