# John Long *et al. v.* United States Bank.

The circuit court has concurrent jurisdiction with a court of chancery, for the purpose of trying the validity of a forfeited forthcoming bond, upon grounds arising anterior to its forfeiture; and the court which first takes jurisdiction will retain it.

Where a forthcoming bond was signed in blank, and the sheriff subsequently filled the same up conditioned for the delivery of property which had no existence; held by the court, that such a bond is wholly without consideration as to the sureties, and creates no obligation on their part, legal or moral, to pay it.

The validity of a forthcoming bond depends upon there having been a substantial levy made upon actual tangible property of the defendant in execution, which was restored to him upon the condition that it should be redelivered on a specific day, to be sold.

The surety on a forthcoming bond is not liable on the same, where the property levied on and described in the bond is not liable to the execution.

The obligation of a surety on a forthcoming bond is not that he will pay the money, but that the property of the defendant in execution, upon which a levy has been made, shall be forthcoming for that purpose.

The bill in this case states, that on the fourteenth of April, 1837, defendants recovered a judgment against Matthew D. Patton, since deceased, for eleven thousand eight hundred and ninety dollars eighty nine cents, besides costs. Execution issued, and on the twelfth of September, 1837, said Patton, Long, and one Barry W. Benson, since deceased, signed a blank forthcoming bond, which was afterwards filled up without their knowledge or consent. That said bond was conditioned for the delivery of no specific property, and was afterwards filled up by the deputy sheriff with negroes, purporting to be Patton's property, some of whom were included in a mortgage by Patton, and others had no existence. That complainants never afterwards assented to said bond. The bond was returned on the second of October forfeited. In October, 1838, complainants moved to quash an execution which issued on said bond for irregularities on its face; which motion was overruled, and the case taken to the High Court of

Errors and Appeals: John A. Grimball was taken as security. At December term, 1840, of said High Court of Errors and Appeals, judgment was affirmed against all the complainants. The bill prays for a perpetual injunction, and general relief.

The amended bill states, that the complainants were ignorant of the fact, at the time of the decision of the supreme court in this case, that a large number of the slaves, included in said blank bond as filled up, were not in existence. That they afterwards ascertained that fact. That Benson was sent down to Natchez to attend to said case, and that he took sick and died; and that in consequence of his illness he failed to inform their counsel. That said bond was signed in blank: this fact did not come to their knowledge until the latter part of the year 1841.

To this bill and the amended bill the defendants filed a general demurrer, upon which the cause was set down for hearing.

JOHN B. FORESTER for complainants.

There are two grounds of equity, either of which would be fatal to this bond. The one, that the bond was signed in blank; the other, that it was conditioned for the delivery of negroes not in existence. The first has been decided by this and the supreme court, and it is useless to argue it. The other is equally valid, as it bound the complainants to deliver property that was not in existence, and therefore was an obligation that it was impossible to perform. A condition in an obligation, that at the time of its execution is impossible to be performed, is void. 3 Com. Dig. p. 96; Co. Lit. 206; 1 Rol. 420, 421, 435; 3 Ser. 74.

But it is objected, that the case has been adjudicated at law. This is denied. The bill shows that the motion to quash, in the circuit court of Adams, was made for irregularities on the face of the bond and the execution, and therefore did not touch the merits of the case. The merits of the case, as now presented, never have been passed upon by any court. The complainants were sureties, and were ignorant of the fact that property had been included in the bond, and they bound for its delivery, that had no existence until after the judgment of the high court in the case; it was therefore impossible for them to avail themselves of it. Besides, they believed that their co-obligor, Benson, would attend to

it and give all necessary information to their counsel, which he was prevented from doing by sickness and death.

These facts, together with the death of Patton, the principal, who was familiar with all the circumstances, and the distance of their residence from Natchez where the judgment was obtained, bring this case clearly within the jurisdiction of this honorable court, who will accordingly look into the merits of it.

The depositions filed in the cause fully sustain the allegations of the bill.

V. E. HOWARD for complainant.

First. This court has decided that, inasmuch as the defendant in a judgment on forfeited forthcoming bond had no day in court, no excuse for not defending at law need be alleged. He could not make the motion after the return term in the circuit court.

Second. The excuse alleged for not defending at law is ample. The defence was prevented by the sickness of one of the defendants, who was the agent of the others also. 2 Story's Eq. 174–9; 1 Cranch 336; 4 Call's Rep. 279–5; 5 Call's Rep. 279.

Third. The newly discovered facts are sufficient ground for excusing a defence at law.

Fourth. There is no ground for saying that the matters set up in the bill were adjudicated in the case when before the High Court of Errors and Appeals, as they were not involved. 5 How. 200. The very point must appear from the record to have been passed upon, or it will not be *res judicata.* 4 Conn. Rep. 276; 4 Day 432; 10 Wen. 80; 3 Wen. 27; 8 Wen. 9; 3 Phil. Ev. 826; note, 587, late edition.

MONTGOMERY & BOYD for respondents.

Chancery will not relieve against a judgment at law, on the ground of its being contrary to equity, unless the defendant in the judgment was ignorant of the fact in question pending the suit, as it could not have been received as a defence, or unless he was prevented from availing himself of the defence by fraud or accident, or the act of the opposite party, unmixed with any negligence or fault on his part. 1 J. C. R. Lansing *v.* Eddy, 51; 3 ib. Duncan *v.* Lyon, 351; 6 ibid. Foster *v.* Wood, 87; 7 Cranch, Ma-

32*

rine Insurance Company *v.* Hodgson, 336; 4 Munford, Noland *v.* Cromwell, 155; 3 Dess. Winthrop *v.* Lane, 324–5; 5 Paige, Norton *v.* Wood, 249; 1 Edw. Loud *v.* Sergeant, 164.

The CHANCELLOR.

This case was submitted upon a general demurrer to the bill. The complainants show that they became the sureties of M. D. Patton, deceased, on a forthcoming bond, taken under a judgment against him, in favor of the Bank of the United States. They allege that, at the time of signing and delivering the bond, the same was blank in its most material parts; that there was no designation of any property to be delivered, and that the blank, in this particular, was afterwards filled up, without their knowledge or consent, with the names of different slaves, which did not belong to the said Patton, and had no real existence.

It appears that a motion was subsequently made, in the circuit court of Adams county, to quash the bond aforesaid for supposed defects, apparent upon the face of it. That motion was overruled, and an appeal was taken to the High Court of Errors, where the judgment below was affirmed, and this proceeding is insisted upon by the defendants as a bar to any relief in this court, upon the ground that the complainants should have made the defence in the circuit court which they are attempting to set up here.

I have heretofore held, although the power to declare a bond void might be one of which a court of law has concurrent jurisdiction, where the bond is sought to be enforced at law, yet, as from the very nature of the proceeding on a forthcoming bond, the obligors could have no day in that court to question its validity, that this, of itself, was sufficient to give this court jurisdiction, even if it did not otherwise exist. Such bond is taken by the sheriff charged with the execution, and the condition is that the obligors will, on the day specified for that purpose, deliver the property, levied on by the execution, to the officer, to be sold. If default is made, the statute declares that the bond shall have "the force and effect of a judgment, and thereupon an execution may issue against all the obligors." This judgment attaches, in vacation, by the silent operation of law, without the active sanction of any judicial functionary, and becomes complete and perfect the

moment that a forfeiture of the condition of the bond takes place. If, then, the forfeiture of the bond has, *ipso facto*, "the force and effect of a judgment," and is then returned into the court from which the execution emanated, upon what rule of pleading or practice can the obligors be heard to object, in that court, that the bond is not their act and deed, because it was signed and delivered in blank? That question was foreclosed the moment the judgment took effect. The bond goes into that court clothed with all the legal attributes of a judgment, and is returned there simply that an execution may issue upon it. All inquiry into the foundation of this statutory judgment would seem to be as effectually foreclosed in that tribunal as if the judgment had been formally rendered in that court; for the legislature has declared that it shall have "the same force and effect."

It is true that the court may entertain a motion to quash for errors of law apparent in the bond, but this is nothing more than the supervisory power it may exercise over its own judgment, by way of motion in arrest thereof.

What is "the force and effect" of a judgment, upon common law principles? One of its most obvious and salutary effects is, to preclude all subsequent inquiry into the merits or validity of the foundation of the action upon which it was rendered. It would not be pretended, where the court itself rendered a judgment upon a common law or other bond, that, when the plaintiff calls for his execution, the defendant may interpose, as an objection thereto, a plea of *non est factum* to the bond, and ask for an issue to try that fact; and yet it would be difficult to find any distinction in principle between the two kinds of judgments.

The High Court of Errors have repeatedly recognized a forfeited forthcoming bond as having all the incidents and effect of a technical judgment. Indeed, I understand the cases to accord with the views I have here expressed, and to hold that you cannot at law go behind the judgment on the bond for the purpose of inquiring into its validity. The cases of Weathersby *v.* Proby, 1 How. 98, and the U. S. Bank *v.* Patton, 5 idem, 238, doubtless hold that doctrine. My attention, however, has been called to a recent decision of that court, in which the right of the circuit court to cause an issue to be made up for the trial of the validity

of the bond *after it had become a judgment*, seems to be sanctioned. Such is the case of Williams *v.* Crutcher, 5 How. 71.

It would, perhaps, be difficult to reconcile the principles of that decision with the previous adjudications of the same court; but that is not my province. It becomes the law to this court, and it is my duty to follow it. According to that case, the circuit court has concurrent jurisdiction with this court, for the purpose of trying the validity of the bond upon grounds arising anterior to its forfeiture. It follows upon familiar principles, that which ever court first takes jurisdiction, must finally decide the case. In Franco *v.* Bolton, 3 Ves. 368, a bill was filed to have a bond delivered up, after there had been a judgment at law upon it, on the ground that the bond was void. The bill was dismissed upon demurrer, the court held that it was competent for the complainant to have pleaded the same matter at law, and have had the bond declared null and void. Although the authority of that case seems to have been questioned by Lord Eldon in the case of Bromley *v.* Holland, 7 Ves. 3, yet I do not find that it has been overruled. The case of Gray *v.* Mathias, 5 Ves. 286, seems to be a recognition of the same doctrine. As then the complainants' while they were urging their motion to quash this bond in the circuit court, might also have insisted upon its invalidity by reason of its having been delivered in blank, I must hold them precluded from relief here as to that ground, as it cannot be doubted that they were then cognizant of its existence; and they show no sufficient excuse why they did not make it. The omission of their agent to call the attention of the counsel who conducted the motion, to that point, constitutes no excuse.

There is another ground, however, upon which I think the demurrer must be overruled. It is distinctly alleged in the bill, that the bond was filled up with the name of slaves, which did not belong to the defendant in execution; and which had a mere ideal existence, and that the complainants did not know this fact until after their motion to quash, nor until a short time before filing this bill. If the sheriff by combination with the defendant or plaintiff in execution, and without the knowledge of the sureties, inserted in the bond a designation of property which did not belong to the defendant, or which had only a fictitious existence, and conse-

John Long *et al. v.* United States Bank.

quently could not be delivered, in discharge of the condition of the bond, it was a fraud upon the sureties which entitles them to relief in this court. Such a bond would be wholly without consideration as to the sureties, and would raise no obligation on their part, legal or moral, to pay it. The validity of such a bond, as to the sureties, depends upon there having been a substantial levy made upon actual, tangible property of the defendant in execution, which was restored to him upon the condition that it should be re-delivered on a specified day, to be sold. The very terms and purposes of the bond distinctly admit the right to deliver the property designated in discharge of such bond; and that right exists in favor of the surety, if he can peaceably get possession of the property. But how is the property to be delivered, if it does not belong to the defendant in execution, or has only an imaginary existence? Suppose the bond were sued on as a common law bond, the breach assigned, would necessarily be the non-delivery of the property; can it be doubted that the sureties might plead thereto the non-existence of the property, and the fraud practiced upon them in that particular? I think not. In the case of Lusk *v.* Ramsey, 3 Munf. Rep. 417, the court decreed a perpetual injunction, at the instance of a surety on a forthcoming bond, upon the ground that after the execution of the bond the property was seized upon by virtue of an older execution, and he thus deprived of the right to deliver it.

The principles of that case are every way applicable to the one before me. It recognises the position that the surety on the bond should not be made liable, unless the property was liable to the execution. What injury has the plaintiff at law sustained, if it were not so liable? Which could not be the case if the property did not belong to the defendant, or had no real existence; it could place him in no worse situation. It was not the policy of the law to enable the creditor to entrap by this process, innocent third persons, into a liability for his insolvent debtor. The spirit of the law contemplates that the creditor shall recover nothing more from the sureties, than he might have recovered from the principal debtor, if he had been allowed to proceed with his levy to a sale of his property. The obligation of the sureties is not that they will pay the debt; but that the property of the defendant in execution

upon which a levy has been made, shall be forthcoming for that purpose. In the case of Kennedy *v.* Coleman, 2 Littell's Rep. 7–8, in a proceeding against a sheriff, for failing to return an execution; although at law he was liable for the amount of the execution, yet it was held, that in equity, he might show that the plaintiff could not have recovered any thing from the defendant in execution.

I see no reason why the same measure of justice should not be extended to the sureties, under the circumstances stated in this bill. The case is altogether analogous in principle. I am accordingly of opinion that the demurrer be overruled, and that the defendant have leave to answer.