Jones, Chief Judge,
delivered the opinion of the court:
This case involves a construction contract. The issue relates to the proper classification of materials that were excavated in carrying out the terms of the contract.
The contract, dated March 12,1945, was for the construction of certain irrigation trenches and installations for the Bureau of Reclamation at the Deschutes Project in the State ■of Oregon. The plaintiff was to furnish all materials, with •designated exceptions, and to perform all work required for the completion of the laterals and sublaterals.
*264 The specifications called for submission of unit prices on 17 items of work. Pertinent details of the specifications are set out in finding 1.
The contract price for common excavation in laterals was-30 cents per cubic yard, and for rock $2.25 per cubic yard. In the excavation for structures the price for common excavation was 75 cents, and for rock $4 per cubic yard.
According to the specifications the rock excavation included.
All solid rock in place which cannot be removed until loosened by blasting, barring, or wedging, and all boulders or detached pieces of solid rock more than one-half cubic yard in volume. Solid rock under this class, as-distinguished from soft or disintegrated rock under common excavation, which also requires blasting before removal, is defined as sound rock of such hardness and texture that it cannot be loosened or broken down by hand drifting picks. No material except boulders or detached pieces of solid rock, will be classified as rock excavation, which is not actually loosened by blasting before removal, unless blasting is prohibited, and barring, wedging, or similar methods are prescribed by written order of the-contracting officer.
Common excavation included “all material other than rock excavation.”
Based upon the plaintiff’s bid for the 17 contract items and the defendant’s estimate of quantities, the consideration in the-contract was estimated to total $101,395. The work was to be completed within 100 calendar days.
■ The contract contained the standard provisions in reference to disputes, by the terms of which all questions of fact, arising under the contract were to be decided by the contracting officer, subject to an appeal to the head of the department, or his authorized representative.
The plaintiff acknowledged receipt of notice to proceed on April 12, 1945. The work was not completed until May' 25, 1946; extensions of time were granted by findings of the contracting officer to cover the entire period of prolonged operations.
During the performance of the work disputes arose over the classification of material. Plaintiff complained that the estimated quantities of rock excavation were inadequate and. that hardpan, disintegrated rock and cemented gravel should *265 be paid for as rock excavation. There were nnmerons discussions between the contracting officer and the various contractors on the project, which included plaintiff. Substantial quantities of compact material, such as cemented gravel and hardpan were encountered and their excavation was required under the contract. In computing the quantities for payment of monthly estimates during the progress of the work these materials were generally classified as common -excavation and paid for at the contract price applicable thereto in accordance with the provisions of Paragraph 33 •of the specifications which defined common excavation in the ■following terms:
All materials other than rock excavation; including, but not restricted to earth, gravel, and also such hard and compact material as hardpan, cemented gravel, and soft or disintegrated rock, which cannot be removed efficiently by team-drawn scrapers or excavating machinery until loosened by blasting; also all boulders or detached pieces of solid rock not exceeding one-half cubic yard in volume.
Following the discussions the construction engineer consulted the Chief of Engineers of the Bureau of Reclamation, who was the contracting officer, in an effort to ascertain whether, regardless of the provisions of the specifications, the hardpan, cemented gravel and disintegrated rock should be excavated and paid for as rock excavation. Following ■this inquiry it was decided that the construction engineer should be permitted to consider and classify certain of these materials as rock excavation, recompute the quantities of •excavation that had been made under the strict terms of the contract, and pay for the quantities thus ascertained at the •contract price applicable to solid rock.
There were also disputes as to the total quantities involved in some of the areas of excavation and a resurvey was made under the personal supervision of the construction engineer. Representatives of the contractor accompanied the construction engineer and his party on the resurvey of the main lateral system on July 18, 1946, and made no objection to the method of reclassification used.
The construction engineer personally examined all disputed .areas of excavation, dug into the slopes back to undisturbed *266 materials, examined the spoil banks and consulted all available field records made throughout the progress of the work.
The construction engineer undertook to determine the quantities and percentages of rock and common excavation and to determine what part of the material such as hardpan should be included in the classification of rock excavation under the liberal classification authorized and adopted. In reclassifying, the construction engineer included considerable quantities of hardpan, cemented gravel, and similar materials as rock rather than as common excavation. This action resulted in an increase of the quantity of rock excavation in laterals from 6,068 to 18,293.9 cubic yards, and in the rock excavation for structures from 897 to 2,840.7 cubic yards. The quantities of common excavation were accordingly decreased.
The effect of this reclassification increased the total payment made under the contract to $138,159.85 instead of the amount which had been estimated as $101,395.
In connection with the final settlement and final voucher the contractor executed a release on the contract dated September 5, 1946; in executing this release, however, it excepted nine claims totaling $236,374.24. The items of exceptions are set out in finding 4.
Plaintiff had especially contended that it should be paid for 7,855.3 cubic yards of rock excavation in laterals and for 2,459.5 cubic yards in structures. These claims and the other items excepted from the release were reiterated in a letter from the plaintiff dated September 21, 1946, in which an early determination of plaintiff’s claims by the contracting officer and the head of the department was requested.
In order to give plaintiff full opportunity to present all the facts and supporting data a conference was held in Denver on March 26 and 27, 1947, which was attended by representatives of the plaintiff. Thereafter the contracting officer sent a representative to the project to make a detailed examination of the work. On the basis of all the information obtained it was the decision of the contracting officer that all excavated materials had been properly classified by the construction engineer; that the quantities of rock excavation determined by him were accurate and that no ad *267 ditional payments were due the contractor. On July 25, 1947, the contracting officer rendered his findings of fact and decision, denying plaintiff’s claims and detailing the facts upon which his findings and decision were based. The contracting officer’s decision is set out in finding 13. He summarized his findings as follows:
(a) The specifications define common excavation and rock excavation.
(b) The contractor did not object to such methods of classification of excavation as were used during the reclassification in the presence of its representatives.
(c) Payment has been made for all excavated material, classified in accordance with the reclassification of July 18,27, 29, and 30, 1946.
(d) It is found that the classification was properly made in accordance with the specifications, giving the contractor the benefit of the most liberal interpretation possible.
(e) The contractor claims that practically all of the material below the top of the hardpan should be classified as rock. Project records show that a large part of this material was excavated without blasting and, therefore, cannot be classified as rock.
The plaintiff appealed from the decision of the contracting officer to the head of the department, whose duly authorized representative decided that plaintiff should be given further opportunity to present additional evidence in respect to its claim. A hearing was held at Bend, Oregon, on June 8 and 9.1948, and a full transcript of the proceedings of that hearing was forwarded to the head of the department. On June 6.1949, the head of the department, through his duly authorized representative, filed his administrative decision on plaintiff’s appeal in which all facts submitted by the plaintiff in support of its claim were discussed, considered, and determined. The decision on appeal was that the plaintiff had been properly paid under the contract for all materials excavated, and that the claim should be denied. Pertinent portions of the decision of the head of the department are set out in finding 16.
The contract provision which is set out in finding 3 stipulated that all disputes concerning questions of fact arising under the contract should be decided by the contracting *268 ■officer, subject to written appeal within 30 days to the head of the department or his duly authorized representative, whose ■decision should be final and conclusive upon the parties thereto.
The disputed items upon which any evidence was produced were questions of fact and subject to the terms of the section in reference to disputes.
No allegation of fraud or arbitrary or unreasonable action implying bad faith has been either alleged or proved. The record shows that the defendant fully examined and considered the claims of plaintiff and determined the same pursuant to the authority granted in the contract. The plaintiff therefore is not entitled to recover. United States v. Wunderlich, 342 U. S. 98.
The petition is dismissed. It is so ordered.
Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.
FINDINGS OE PACT
The court, having considered the evidence, the report of Commissioner Marion T. Bennett, and the briefs and argument of counsel, makes the following findings of fact:
1. Through the Bureau of Reclamation, Department of Interior, hereinafter referred to as the Bureau, the defendant issued specifications and invitations for bids for the construction of the earthwork and structures of lateral M-37 and sublaterals in the Deschutes Project in the State of Oregon. The work to be performed under the specifications also consisted of furnishing all labor and material, except designated materials to be furnished by the Government. The specifications called for submission of unit prices on 17 items of work, for which quantities were estimated, and provided that bids would be received at Bend, Oregon, until February 3,1945.
The specifications contained, among others, the following pertinent provisions:
4. Quantities and unit prices. — The quantities noted in the schedule are approximations for comparing bids, and no claim shall be made against the Government for excess or deficiency therein, actual or relative. Payment at the prices agreed upon will be in full for the *269 completed work and will cover materials, supplies, labor, tools, machinery, and all other expenditures incident to satisfactory compliance with the contract, unless otherwise specifically provided.
sjs ‡
13. Protests. — If the contractor considers any work demanded of him to be outside the requirements of the ■contract, or considers any record or ruling of the contracting officer or of the inspectors to be unfair, he shall immediately upon such work being demanded or such record or ruling being made, ask, in writing, for written instructions or decision, whereupon he shall proceed without delay to perform the work or to conform to the record or ruling, and, within ten (10) days after date •of receipt of the written instructions or decision, he shall file a written protest with the contracting officer, stating clearly and in detail the basis of his objection. Except for such protests or objections as are made of record in the manner herein specified and within the time limit stated, the records, rulings, instructions, or ■decisions of the contracting officer shall be final and conclusive. Instructions and/or decisions of the contracting officer contained in letters transmitting drawings to the contractor shall be considered as written instructions ■or decisions subject to protest or objections as herein provided.
*****
33. Glassification of excavation. — Except as otherwise provided in these specifications, all material moved in required excavation for the laterals, for structures, and for the construction of embankments will be measured, in excavation only, to the neat lines shown on the drawings or prescribed by the contracting officer, and will be ■classified for payment as follows:
Roch excavation. — All solid rock in place which cannot be removed until loosened by blasting, barring, or wedging, and all boulders or detached pieces of solid rock more than one-half cubic yard in volume. Solid rock under this class, as distinguished from soft or disintegrated rock under common excavation, which also requires blasting before removal, is defined as sound rock of such hardness and texture that it cannot be loosened or broken down by hand drifting picks. No material except boulders or detached pieces of solid rock, will he classified as rock excavation, which is not actually loosened by blasting before removal, unless blasting is prohibited, and barring, wedging, or similar methods *270 are prescribed by written order of tbe contracting officer.
Common excavation. — All material other than rock excavation; including, but not restricted to, earth, gravel, and also such hard and compact material as hardpan, cemented gravel, and soft or disintegrated rock, which cannot be removed efficiently by team-drawn scrapers or excavating machinery until loosened by blasting; also all boulders or detached pieces of solid rock not exceeding one-half cubic yard in volume.
No additional allowance above the unit prices bid in the schedule for excavation will be made on account of any of the material being wet or frozen. It is desired that the contractor or the contractor’s representative be present during the measurement of material excavated. On written request of the contractor, made within 10' days after the receipt of any monthly estimate, a statement of the quantities and classifications of excavation between successive stations or in otherwise designated locations included in said estimate will be furnished to' the contractor within 10 days after the receipt of such request. This statement will be considered as satisfactory to the contractor unless specific objections thereto,, with reasons therefor, are filed with the contracting officer, in writing, within 10 days after receipt of said statement by the contractor or the contractor’s representative on the work. Failure to file such written objections with reasons therefor within said 10 days shall be considered a waiver of all claims based on alleged erroneous estimates of quantities or incorrect classification of materials for the work covered by such statement.
2. On March 12, 1945, the Bureau entered into a contract with the plaintiff, then a partnership with its principal place of business at Seattle, Washington, under the terms of which the plaintiff agreed to furnish all materials, subject to designated exceptions, and to perform all work required for the completion of lateral M-37 and sublaterals in accordance with the specifications which were incorporated into and made a part of the contract. Based upon the plaintiff’s bid1 for the 17 contract items and the defendant’s estimate of quantities, the consideration was estimated in the contract, to be $101,395. All work was to be completed within 100-calendar days after receipt of notice to proceed.
The contract contained, among others, the standard Government contract articles, as follows: Article 3, Changes: Article 4, Changed Conditions; Article 5, Extras; Article 9,. *271 Delays-Damages; and Article 15, Disputes, the latter reading as follows:
Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed.
3. Notice to proceed was issued by the defendant on April 10, 1945, and acknowledged by the contractor on April 12, 1945, thereby establishing the date for completion of all work under the contract as July 21,1945. The plaintiff completed all work, including that covered by extra work orders, on May 25, 1946. Extensions of time were granted by findings of the contracting officer to cover the full period of prolonged contract operations. The amount paid the plaintiff for the contract work, including that covered by extra work orders, totalled $138,159.85.
4. In connection with the execution of the final payment voucher, the contractor executed a release on the contract, dated September 5, 1946, in which it excepted nine claim items totalling $236,374.24. The excepted claims were stated in the schedule attached to the release in the following language:
1. The sum of $15,400.00 wrongfully withheld by the Government as liquidated damages.
2. The sum of $15,317.84 due as compensation for 7,855.3 additional cubic-yards of rock excavated for laterals.
3. The sum of $7,993.38 due as compensation for 2,459.5 additional cubic yards of rock excavated for structures.
4. The sum of $5,914.25 due as and for additional costs to the contractor for interest on liquidated damages wrongfully withheld by the Government and by reason of the Government’s failure to make progress payments, promptly when due.
5. The sum of $53,141.45 due as excess costs to the contractor by reason of the failure on the part of the. Government to furnish plans, field engineering, and *272 Government furnished materials when necessary and required, and by reason of the fact that the Government estimate of the quantity of rock was not reasonably accurate, the quantity of rock so greatly exceeded the Government estimate that the contractor was unable to reasonably anticipate such excessive quantities thereby increasing the contractor’s costs and expenses.
6. The sum of $690.00 due for the common excavation of 2,300 cubic yards additional not paid for or allowed. (Between Stations #375+34 to #409+75 on Lateral M-37.)
7. The sum of $10,495.36 due to the contractor for hand work and re-excavation.
8. The sum of $93,552.28 due as excess costs and expenses to the contractor, and representing the total loss on the job (not including liquidated damages) all caused and brought about by actions of the Government in: ■delaying the work; failing to properly estimate the quantity of rock excavation within a reasonable degree of accuracy; wrongfully withholding progress payments; wrongfully withholding liquidated damages; improperly classifying the material excavated; requiring additional work not called for under the contract; withholding proper payments due for rock excavation; requiring the contractor to carry and finance the entire ■construction without making proper progress payments.
9. The sum of $33,869.68 due as a reasonable sum (15% ■of the total cost) to be allowed to the contractor as and for his overhead costs and expenses and a reasonable profit on the construction, for the reason that the actions ■of the Government abrogated the contract and entitled the contractor to recover all costs and expenses together with a reasonable profit on the job.
The liquidated damages withheld at the time the release was executed (Claim Item 1) were later remitted and paid in full pursuant to findings of the contracting officer extending the time of performance and relieving the contractor of liquidated damages for delays.
The claims now asserted in plaintiff’s petition, under four ■causes of action, were included in the nine items of claim stated in the exceptions to the release as .Claim Items 2, 3, 4, 5, 7 and 9 and were administratively considered and denied by the contracting officer and the head of the department on appeal. In plaintiff’s proposed findings of fact submitted to the commissioner and the court, it is stated that the defend *273 ant’s motion to' dismiss the petition under Rule 49 (b) is not opposed except as to the third cause of action. This contested cause of action includes Items 2 and 3 of the nine claims herein noted as excepted by the plaintiff in its release of September 5,1946.
5. As noted, the claims here urged, and the evidence produced in support thereof, relate primarily to the excavation required for the main lateral, sublaterals and structures on the canal, the quantities of excavation involved, and the payment for the quantities determined. The quantities of the various classifications of excavation to be performed (as defined in Paragraph 33 of the specifications hereinbefore quoted in its full text) were estimated as 100,000 cubic yards of common excavation for laterals, 1,000 cubic yards of rock excavation for laterals, 12,000 cubic yards of common excavation for structures, and 200 cubic yards of rock excavation for structures. The contract specifically provided that these estimates were approximations only for the comparison of bids and that no claim should be made against the Government for an actual or relative excess or deficiency therein.
The contract prices for the various classes of excavation were as follows:
Common excavation for laterals_$0.30 per cubic yard
Hock excavation for laterals_ 2.25 per cubic yard
Common excavation for structures_ . 75 per cubic yard
Bock excavation for structures_ 4.00 per cubic yard
6. During the course of construction, defendant’s representatives at the site computed the estimated quantities of excavation and paid the plaintiff therefor on estimated monthly progress reports which were modified and amended to conform with additional or corrected field information compiled as the work progressed. Substantial quantities of such compact materials as cemented gravels, hardpan, etc., were encountered and their excavation was required under this contract. In computing the quantities for payment of monthly estimates during the progress of the work, these materials were generally classified as common excavation and paid for at the contract price applicable thereto in accordance with the provisions of Paragraph 33 of the specifi *274 cations which defined common excavation in thS following terms:
All material other than rock excavation; including, but not restricted to earth, gravel, and also such hard and compact material as hardpan, cemented gravel, and soft or disintegrated rock, which cannot be removed efficiently by team-drawn scrapers or excavating machinery until loosened by blasting; also all boulders or detached pieces of solid rock not exceeding one-half cubic yard in volume.
7. Beginning with the receipt of monthly estimates 3 and 4, the plaintiff made written requests for itemized statements of the quantities and classification of excavation shown in the monthly estimates and protested generally with respect thereto. In June 1946, the plaintiff submitted to the construction engineer a detailed list of the quantities which it claimed should be paid for as rock excavation at designated stations along the laterals and at the location of certain structures. The crux of plaintiff’s complaints was to the effect that the estimated quantities of and payment for rock excavation were inadequate and that materials such as hard-pan, disintegrated rock, cemented gravels, etc., should be included in the quantities of rock excavated and be paid for at the contract price applicable to solid rock.
8. The classification of and payment for such materials as hardpan, cemented gravels, disintegrated rock, etc., as common excavation was the subject of some discussion between the construction engineer and various contractors on the project, including the plaintiff. As a result of these inquiries and discussions, the construction engineer consulted with the Chief of Engineers of the Bureau (the contracting officer) to ascertain whether such materials could be included properly in the computation of quantities for rock excavation and be paid for under that category despite the provisions of the specifications that hardpan, cemented gravels, disintegrated rock, etc., should be excavated and paid for as common excavation. As a result it was determined that the construction engineer should be permitted to consider and classify certain of these materials as rock excavation, recompute the quantities of excavation in accordance with such *275 determination, and pay for the quantities thus ascertained at the contract price applicable to solid rock. The decision to reclassify and pay for these materials as rock excavation, rather than as common excavation, required a physical resurvey of all areas or stations at which differences in quantities were claimed, an analysis of all available field notes and cross-sectioning data made during the progress of excavation, recomputation of the statement of quantities of materials excavated throughout the laterals, the revision of estimates, and the recomputation of final quantities and payments.
9. In July 1946 all areas of excavation, in which there was a disagreement as to quantities, were resurveyed and reclassified under the personal supervision and direction of the construction engineer. The contractor was advised that such a field survey for reclassification of materials and ascertainment of quantities would be made and its representatives were invited to participate. Eepresentatives of the contractor accompanied the construction engineer and his party on the resurvey of the main lateral system on July 18,1946, and made no objection to the method of reclassification used. They were afforded an opportunity to be present and voice their objections, if any, to the survey of the excavation of the sublaterals which was made on July 27, 29, and 30,1946. The plaintiff’s representatives were not, however, present on the three latter dates.
In order to obtain all information bearing upon the type and quantities of materials excavated to enable him to make an informed and fair determination, the construction engineer traversed the entire main lateral and sublaterals on foot. He personally examined all disputed areas of excavation, dug into the slopes back to undisturbed materials, examined the spoil banks, and consulted all available field records made throughout the progress of the work. The quantities claimed by the plaintiff in its June statement were considered and discussed with plaintiff’s representatives. The contracting engineer’s determination as to the quantity of material to be classified and paid for as rock in the disputed areas on the main lateral was discussed with plaintiff’s representatives during the field examination. A detailed itemized *276 written statement of the revised classification and determination of quantities of excavation was prepared by the office of the construction engineer and submitted to the contractor on August 19,1946. The data relative to structure excavation on the main lateral was supplemented by additional detail which was forwarded to the contractor on September 26, 1946. In the summaries and supporting data, the construction engineer detailed the quantities, station by station, throughout the lateral ¿ as well as his source material and comparative analysis in order that the contractor would be fully apprised of the determination of quantities at every station throughout the entire area of excavation.
10. In ascertaining the quantities and percentages of “rock” and “common” excavation in every area or station, the construction engineer made an effort to procure and properly evaluate all available information, to utilize the most accurate data available, and to pay the contractor the price applicable to rock excavation for all portions of such materials as hardpan, etc., which could be included in that ■category under the liberal classification authorized and adopted. In reclassifying the materials and recomputing the quantities, the construction engineer included large quantities of hardpan, cemented gravels, etc., as rock rather than as common excavation. This resulted in an increase in the quantity of rock excavation in laterals from 6,068 cubic yards to 18,293.9 cubic yards and in the rock excavation for structures from 897 cubic yards to 2,840.7 cubic yards. The quantities of common excavation were decreased accordingly. Inclusion of these increased quantities of hardpan, etc., as rock excavation resulted in the plaintiff’s being paid for 115,-•377.5 cubic yards of common excavation for laterals, 18,293.9 cubic yards of rock excavation for laterals, 5,979.1 cubic yards of common excavation for structures, and 2,840.7 cubic yards of rock excavation for structures. The total payment made under the contract was $138,159.85, as against the estimated consideration of $101,395.
11. In its release on the contract executed in September 1946, the plaintiff sought payment in the sum of $15,317.84 •for an additional 7,855.3 cubic yards of rock in laterals and *277 the sum of $7,998.38 for an additional 2,459.5 cubic yards of rock in structures, or a total of $23,311.22 sought also in this suit.
Although the plaintiff contended that the construction engineer’s reclassification and final computation of quantities was in error and that the quantity of rock excavation should be greater than the quantities determined by him, no errors were urged to his classification or determination of quantities •at any specific station. The claims set forth in the exceptions to the release were reiterated in a letter from the plaintiff’s •counsel dated September 21, 1946, in which an early determination of plaintiff’s claims by the contracting officer and by the head of the department was requested.
12. In an effort to have before him all possible information relative to plaintiff’s claims before making his findings of fact thereon, and to afford the plaintiff an opportunity to present and discuss its claims and supporting data, the contracting officer held a conference in Denver on March 26 and 27,1947, which was attended by representatives of the plaintiff. Thereafter, the contracting officer sent a representative to the project to make a detailed field examination of the work with the construction engineer. On the basis of all information thus obtained, it was the decision of the contracting officer that all excavated materials had been properly classified by the construction engineer, that the quantities of rock excavation as determined by him were accurate and correct, that no additional payments were due the contractor, and that the plaintiff’s claims should be denied. On July 25, 1947, the contracting officer rendered his findings of fact and decision denying plaintiff’s claims and detailing the facts upon which his findings and decision were based.
13. The contracting officer’s decision contained, among others, the following findings pertinent to plaintiff’s claim for additional quantities of rock excavation on the laterals:
* * * * *
5. The materials encountered in the excavation of lateral M-37 and sublaterals fall into three categories. The topsoil usually consists of a fine sandy loam. This is often underlain with hardpan made up of laminated layers of soft to hard tuffaceous sandstone, caliche, or *278 poorly cemented cinders and lake gravels. Underlying the hardpan, or in places directly below the topsoil, is a vesicular, fragmented, hard basalt. In a few places a soft andesite is the underlying rock instead of basalt. The hardpan varies from common to rock, depending upon a combination of the degree of hardness,, the. extent of cementation, and the extent of open laminations and horizontal checks, and was classified and paid for accordingly.
6. In measuring lateral excavation for payment, cross sections were taken to determine the elevations of original ground; the top of the hardpan or rock; and, on lateral M-37 and all of the sublaterals where the hard material was exposed, a sufficient length of time to permit sections to be taken, the top of the material that was blasted. The total quantity below the top of the hard-pan amounted to 26,176.5 cubic yards. Some of this was removed by the ripper and excavating machinery without blasting and was classed as common excavation. Where cross sections were taken in advance of blasting, the material not removed by equipment before blasting was classified as rock excavation. On the sublaterals where cross sections could not be taken in advance of the blasting operations, the line of demarcation between common and rock excavation was determined by examination of the cut slopes and material below this line was classified as rock. A total of 18,293.9 cubic yards of material was paid for as rock on the final estimate. The contractor claims an additional 7,855.3 cubic yards, making a total of 26,149.2 cubic yards claimed. This amounts to all but 27.3 cubic yards of the total amount of material below the top soil.
7. Project records indicate that of the total of 7,882.6 cubic yards of material below the top of the hardpan, which was not paid for as rock, practically all was removed without blasting. On lateral M-37 alone, where the greater part of the rock was encountered, there were 23,876.6 cubic yards of material below the top of the hardpan. After the first cut was taken and before any blasting was done, 17,306.7 cubic yards remained. The difference of 6,569.9 cubic yards was removed without blasting and accordingly was paid for as common excavation.
8. The final classification is found to be proper and in accordance with the provisions of Specifications No. 1092 and gives the contractor the benefit of the most liberal interpretation of the specifications'possible.
*279 SUMMARY OF FINDINGS
9. From the foregoing statement of fact in connection with claim item 2, the following summary of findings is made:
(a) The specifications define common excavation and rock excavation.
(b) The contractor did not object to such methods of classification of excavation as were used during the reclassification in the presence of its representatives.
(c) Payment has been made for all excavated material, classified in accordance with the reclassification of July 18, 27, 29, and 30,1946.
(d) It is found that the classification was properly made in accordance with the specifications, giving the contractor the benefit of the most liberal interpretation possible.
(e) The contractor claims that practically all of the material below the top of the hardpan should be classified as rock. Project records show that a large part of this material was excavated without blasting and, therefore, cannot be classified as rock.
DECISION OF THE CONTRACTING OFFICER
10. After a careful review of all of the facts and circumstances in connection with item 2 under the claim, it is the conclusion of the contracting officer that the excavation has been properly classified and that there is no proper basis for allowance of this item of the claim; and it is, therefore, denied.
14. The findings of the contracting officer contained the following findings of fact on plaintiff’s claim for additional rock excavation in structures:
2. The structures were located at various points along the laterals, and the contractor’s letters of protest in regard to the classification of excavation (Exhibit 3 to Exhibit 10, inclusive) apply to the excavation for structures as well as to the excavation for laterals. On July 18, 1946, the excavation for structures on lateral M-37 was reclassified by Government engineers accompanied by representatives of the contractor. This reclassification was accomplished in connection with the reclassification of the excavation for laterals. Similarly, on July 27, 29, and 30, 1946, the excavation for structures on the sublaterals was reclassified by Government engi *280 neers without a representative of the contractor being present. During the performance of the reclassification in company with the contractor’s representatives,_ no objection was made to the methods used in classifying the material. The reclassification of the excavation for structures was made on the basis of the best information then available, giving the contractor the benefit of a liberal interpretation of the specifications. The reclassification represents the best judgment of competent and experienced Government engineers. The final classification is found to be proper and in accordance with the provisions of Specifications No. 1092.
15. The plaintiff appealed from the findings of the contracting officer to the head of the department. In connection with the appeal, the duly authorized representative of the head of the department determined that additional evidence should be presented on the plaintiff’s claims for additional compensation for quantities of rock excavated. On April 22, 1948, he, therefore, requested that a hearing be held at which further evidence should be presented on Claim Items 2 and 3 and that the record of the hearing be forwarded for consideration in reaching a decision upon the plaintiff’s pending appeal from the findings of fact and decision of the contracting officer.
A hearing for this purpose was held at Bend, Oregon, on June 8 and 9, 1948, and a full transcript of the proceedings of that hearing was forwarded to the head of the department. On June 6, 1949, the head of the department, through his duly authorized representative, filed his administrative decision on plaintiff’s appeal in which all facts subr mitted by the plaintiff in support of its claims were discussed, considered and determined. The plaintiff’s claims relative to the disputed quantities of excavation and all evidence presented in support thereof were considered and discussed in detail in reaching the decision that the quantities of rock excavated had been ascertained properly and accurately by the construction engineer and by the contracting officer, that the record contained no evidence of error or caprice which would warrant their alteration or revision, that the plaintiff had been properly paid under the contract for all materials excavated, and that' plaintiff’s claims should be denied.
*281 16. The decision of the head of the department contained, among others, the following findings pertinent to the claims asserted and the propriety and accuracy of the quantities of excavation as determined by the construction engineer and the contracting officer:
* * 4e * *
Had the Government elected to stand on the quantities and classifications of excavation shown in the various monthly estimates, it would be necessary to determine whether the contractor had requested a statement of the quantities and classifications included in each estimate and whether it had filed “specific” written objections to each statement, “with reasons therefor,” as required by the provisions of paragraph 33 quoted above.
It is unnecessary, however, to pass upon these questions, because the Government did not in fact rely on the quantities and classifications included in the monthly estimates in computing finally the amount due the contractor.
*****
In July 1946, after the work had been completed, the Construction Engineer personally reclassified, in the light of the new interpretation of the specifications, the materials which had been excavated in the reaches of the laterals and at structures in respect to which there was a disagreement. The results of the reclassification were subsequently made available to the contractor.
*****
As pointed out on pages 5 and 6 of this decision, the Construction Engineer concluded, after correspondence with the Chief Engineer’s office, that certain cemented gravels and hardpans should be paid for as rock. The Construction Engineer testified that, under the “Liberalized” interpretation of the specifications, the Government attempted to classify as rock excavation all material which could not be efficiently removed by machinery or hand picks and which had to be blasted.
I do not decide whether the new interpretation of the specifications adopted for the purposes of reclassification was correct as a matter of law or whether the interpretation originally followed by the Bureau of Reclamation was wrong. (Counsel for the contractor elicited a statement from the Construction Engineer that the initial interpretation was wrong.) It is sufficient to point out that a more liberal interpretation could hardly have been placed on specifications which defined as com *282 mon excavation certain materials, designated by type, which could not “be removed efficiently by team-drawn scrapers or excavating machinery until loosened by blasting.” In fact, I do not understand that the contractor attacks the interpretation of the specifications in the light of which the reclassification was made. Eather, the contractor contends that the reclassification made by the Construction Engineer was inaccurate.
The Construction Engineer personally conducted the reclassification of the materials which were excavated. He stated that on lateral M-3I he “dug into the slopes back to the undisturbed material where there was a disagreement” and examined the spoil banks. Presumably, the same procedure was followed in the reclassification of the material excavated from the sublaterals. In respect to the material excavated for structures, the sections of the laterals in which the concrete structures had been placed “were examined at each end of the concrete and extended back under the concrete, and all sources available during the excavation and prior to the construction of the concrete were used.”
After examining the slopes and banks at a given location and consulting various field records, the Construction Engineer then determined what percentage of the material should be classified as rock excavation. The Volume of materials to which a particular percentage was applied was derived from one of four sources: “Volume of rock and hardpan remeasured,” “Eock remaining after pioneer cut,” and “Volume of rock previously paid.”
* # # * sfe
Counsel for the contractor contends that the percentages of particular quantities of material which were reclassified as rock excavation were arrived at by guess work. It is true, as the Construction Engineer admitted, that the conclusions which he reached as to the percentages were based upon his personal judgment. It does not follow, however, that because another engineer might have reached different conclusions, those of the Construction Engineer were the result of pure conjecture. The testimony of the Construction Engineer that he dug into the material along the laterals and structures and examined it and that he consulted all available field records was not contradicted. It seems to me that this procedure gave to the Construction Engineer the bases for an informed judgment.
Counsel for the contractor also attacks the reasonableness of the reclassification by pointing out that the Con *283 struction Engineer showed no consistency in selecting the source from which he derived the quantity of materials to which the percentages were applied. Especial emphasis is placed on the contention that, although a remeasurement of hardpan and rock was made by employees of the Government, the percentages were seldom applied to the quantities as remeasured, and counsel for the contractor states that “It is only fair to conclude, that of the four bases, the one producing the least amount of rock would be chosen.” The Construction Engineer testified that he chose as the source in each instance the measurement which he thought most accurate.
‡ ‡ $
As the Construction Engineer was a qualified engineer, experienced in the type of work in hand, and thoroughly familiar with the work done on the project, his determinations as to the quantities involved are entitled to great weight, and I find in the record no evidence of error or caprice which would warrant disturbing them. * * * * *
I find no reason to reverse or modify the rejection by the contracting officer of items 2 and 3 of the claim.
17. The contract documents, quoted in findings 1 and 2, provided that all disputes concerning questions of fact arising under the contract should be decided by the contracting officer subject to written appeal by the contractor within thirty days to the head of the department concerned or his duly authorized representative, whose decision should be final and conclusive upon the parties thereto. The only claim on which the plaintiff has produced evidence in this court related to the classification and determination of quantities of materials excavated and the decision of the construction engineer, which was affirmed by the contracting officer and, on appeal, by the duly authorized representative of the head of the department.
The plaintiff does not plead fraud or any arbitrary or unreasonable action by the defendant implying bad faith.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and the petition is therefore dismissed.